## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MELVIN FRANK SHERMAN, III,
  *Plaintiff,*

  v.                                         No. 3:22-cv-1159 (VAB)

JOHN DOE, et al.,
  *Defendants.*

## INITIAL REVIEW ORDER

Melvin Sherman ("Plaintiff"), currently incarcerated at Corrigan-Radgowski

Correctional Center ("Corrigan"), has filed a *pro se* Complaint against Dr. Rommell Geronimo;

nurses Arial Swan-Daly and Susette Kelo; Correctional Officers Cassidy, Cienik, and Marios-

Etman; counselor supervisor Dumas;[1] Connecticut Department of Correction ("DOC")

Commissioner Angel Quiros; former DOC Commissioner Rollin Cook; former Corrigan Warden

Corcella; and John or Jane Doe, Director of Hartford Healthcare (collectively, "Defendants").

Compl., ECF No. 1 (Sept. 14, 2022).[2] Mr. Sherman asserts claims under 42 U.S.C. § 1983 for

violation of his rights under the United States Constitution and under state law. *Id.* at 18–20.

Mr. Sherman is suing Defendants in their individual and official capacities, with the

exception of current Commissioner Quiros, whom he sues in his official capacity only. *See id.* at

11–12, 20.[3]

---

[1] Although Defendant Dumas is described as a counselor supervisor in the Complaint's description of the Defendants, Compl. ¶ 9, Mr. Sherman refers to Defendant Dumas as Lieutenant Dumas in the body of the Complaint, *id.* ¶¶ 25, 42.

[2] On October 19, 2022, the Court granted Mr. Sherman's motion to proceed *in forma pauperis* in this action. *See* Order, ECF No. 19.

[3] A plaintiff may seek injunctive relief under Section 1983 only against a defendant sued in his official capacity. *See Altayeb v. Chapdelaine*, No. 3:16-cv-00067 (CSH), 2016 WL 7331551, at *3 (D. Conn. Dec. 16, 2016). The Court has previously denied Mr. Sherman's motion for temporary restraining and preliminary injunction.

As required by 28 U.S.C. § 1915A, the Court now reviews Mr. Sherman's Complaint to determine whether his § 1983 claims may proceed to service on any Defendant.

Following this initial review, and for the reasons stated below, the case shall proceed on the following claims for damages against Defendants in their individual capacities: (a) the Fourteenth Amendment substantive due process claim against Nurse Swan-Daly; (b) the Eighth Amendment sexual abuse claim against Nurse Swan-Daly; (c) the Eighth Amendment deliberate indifference claim against Lieutenant Dumas; and (d) the state law assault and battery claims against Nurse Swan-Daly. All other claims, including all official capacity request for declaratory and injunctive relief, are dismissed.

The following Defendants are dismissed from this action: Director of Hartford Health Care John or Jane Doe, former Commissioner Cook, Dr. Rommell Geronimo; Nurse Susette Kelo, Correction Officer Cassidy, Correction Officer Cienik, Correction Officer Marios-Etman, Warden Corcella, and current Commissioner Angel Quiros.

Mr. Sherman's claims about mistreatment during his transfers between Garner and Corrigan and his confinement at Corrigan after his 2021 transfer are severed and dismissed without prejudice. He may file a separate action to pursue his claims arising from these allegations.

Mr. Sherman may, by **May 8, 2023**, file an Amended Complaint to correct the deficiencies in his claims identified in this Order. He is advised that any Amended Complaint will completely replace the prior Complaint in the action, and that no portion of any prior

---

Order, ECF No. 20 (Nov. 10, 2022). It has also denied a motion for reconsideration of that order. Order, ECF No. 22 (Dec. 2, 2022). Mr. Sherman has recently filed another motion for temporary restraining order and preliminary injunction that is pending. Mot. for TRO and Prelim. Inj., ECF No. 23 (Dec. 7, 2022).

Complaint shall be incorporated into his Amended Complaint by reference. He must name all

Defendants against whom he asserts claims in the caption of his Amended Complaint.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

At the times relevant to this Complaint, Mr. Sherman allegedly suffered from an infected

first, second or third degree burn on his right foot, a shoulder injury, and kidney failure.[4] Compl.

¶¶ 34, 39.

On September 13, 2019, Mr. Sherman was allegedly admitted to Backus Hospital for

kidney failure after he had engaged in a hunger strike at Corrigan while he was in the behavioral

observation cell. *Id.* ¶ 17–23. He allegedly went on the hunger strike because the medical staff

did not treat him for a shoulder injury after he was placed in the behavioral observation cell. *Id.*

¶ 23–24.

During Mr. Sherman's hunger strike, medical staff allegedly failed to monitor him or see

him for treatment. *Id.* ¶ 25. Lieutenant Dumas allegedly called Mr. Sherman to his office to

discuss his hunger strike, but Mr. Sherman allegedly fainted while he was walking. *Id.* Mr.

Sherman allegedly woke up at Backus Hospital but still refused any food or water and any

---

[4] Mr. Sherman also refers to bone degeneration in his spine, cysts, and neurological conditions. *See* Compl. ¶ 19 (alleging that "[Corrigan] medical staff" were deliberately indifferent to his "serious bone degeneration and condition"), 15 (alleging that Mr. Sherman requested "proper medical treatment of his bone degeneration"),¶ 26 (alleging that he is forced to walk down flights of stairs and long hallways despite his medical condition), ¶ 60(c) (requesting an injunction requiring DOC to treat his spinal conditions); *see also* Compl. Ex. A, at 24–28, 34; Ex. C, at 100, 102, 105–108 (medical records related to Mr. Sherman's alleged spinal and neurological conditions). Mr. Sherman has not, however, alleged sufficient nonconclusory facts to state any plausible claims relevant to these conditions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient . . . factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Complaint does not allege any specific actions by any of the specific Defendants named in this action that could amount to deliberate indifference to his medical needs. Accordingly, claims related to Mr. Sherman's bone degeneration, cysts, and other spinal and neurological conditions will be dismissed without prejudice.

medical treatment. *Id.* ¶ 26. He allegedly requested to be transferred out of Corrigan and provided with proper medical treatment for his bone degeneration condition. *Id.*

Defendant RN Swan-Daly allegedly lied to Mr. Sherman by telling him that the DOC Commissioner and Backus Hospital had a court order to force him to take food, medical treatment, and intravenous fluids. *Id.* ¶ 27. She allegedly stated that even if Mr. Sherman resisted, he would not be allowed to die because security guards would be called; he would be shackled, tubes would be forced down his throat; his nose would be held; and medication would be forcibly administered. *Id.* According to Mr. Sherman, when he asked to see the court order, papers were held up in front of him, but he could not see them closely. *Id.* ¶ 28. He allegedly requested to see a supervisor, but his request was denied. *Id.* ¶ 29. A doctor and an unknown woman allegedly came to see Mr. Sherman, but he was not permitted to see the papers or to call his family on the telephone. *Id.* He allegedly objected to the denial of his use of the telephone at the hospital because no one, not even his family, knew he was in the hospital. *Id.* ¶ 30.

When Nurse Swan-Daly allegedly asked to check his vitals, he allegedly said nothing. *Id.* ¶ 31. Nurse Swan-Daly then allegedly grabbed his arm and later poured him two cups of water that she instructed him to drink. *Id.* Mr. Sherman allegedly refused to do so. *Id.* Mr. Sherman alleges that, after he refused to drink the water, a guard told him that there was a court order and threatened him with violence. *Id.* ¶ 32.

Mr. Sherman then allegedly drank the water. *Id.* at ¶ 33. Nurse Swan-Daly allegedly poured more water, although he allegedly told her his stomach and penis hurt and he needed to urinate. *Id.* Nurse Swan-Daly, however, allegedly ignored Mr. Sherman for hours and failed to examine him. *Id.* According to Mr. Sherman, he kept pushing the button to complain about his groin pain, but Nurse Swan-Daly allegedly yelled at him to urinate in the plastic bottle and told

him to drink more water. *Id.* Nurse Swan-Daly allegedly obtained a fluid measuring tool, which allegedly showed his bowels were 98% full. *Id.* Later, Mr. Sherman's penis was allegedly "swab[bed]." *Id.* ¶ 34. Nurse Swan-Daly allegedly "shoved" a tube up his penis for him urinate, and then took blood from him by stabbing him several times with a sharp needle. *Id.* ¶ 35. Mr. Sherman appears to claim that he was falsely diagnosed with a urinary infection. *See id.* ¶¶ 34, 40 ("The urina[ry] infection. Lie!").

At this time, Mr. Sherman was allegedly still requesting to see the court order and to use the telephone; he was also allegedly still refusing medical treatment. *Id.* ¶ 36. He allegedly asked RN Kelo to stop yelling his medical issues from the middle of the floor, claiming that she was acting unprofessionally and violating his privacy rights under the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* ¶ 37. He also allegedly told her that he knew she had told Correction Officer Cassidy about his urinary infection and that Officer Cassidy had told RN Kelo that Mr. Sherman contracted the infection because he had raped his cellmate. *Id.* ¶ 38. He allegedly informed RN Kelo that he wanted to speak with her supervisor and "pushed the button," but RN Kelo allegedly "turned it off." *Id.* ¶ 39.

Later, Mr. Sherman's intravenous drip allegedly ran out while he was unattended. *Id.* ¶ 40. He allegedly continued to refuse medical treatment. *Id.*

Mr. Sherman alleges that Correction Officer Cassidy and Nurse Kelo were "falsifying a story."[5] *Id.* ¶ 40. Eventually, according to the Complaint, Dr. Geronimo came to Mr. Sherman's room and Mr. Sherman told him about the issues he was facing. *Id.*

---

[5] It is unclear from Mr. Sherman's allegations whether he is alleging that Nurse Kelo and Correction Officer Cassidy told a false story about his urinary infection and cellmate rape or whether the allegedly false story was about the assertedly nonexistent medical order.

Mr. Sherman allegedly complained to Dr. Geronimo about the false order and staff mistreatment, and false urinary infection; allegedly informed Dr. Geronimo that he would refuse treatment until the correctional staff action was reported to the supervisor; and allegedly requested Dr. Geronimo for the staff to be disciplined. *Id.*

An hour later, Mr. Sherman was allegedly discharged wearing only his gown during a rainstorm. *Id.* Mr. Sherman had allegedly been considered a threat despite his weakened state after a seventeen-day hunger strike, injuries from being beaten and burned, and being chained to a bed with two guards surrounding him. *Id.* ¶ 41. Mr. Sherman alleges that there was no court order and that he posed threat. *Id.* ¶ 42.

At Corrigan (presumably before Mr. Sherman's hospital admission), Lieutenant Dumas had allegedly permitted Mr. Sherman's foot "to rot," watched him starve to death, and heard his requests for a transfer out of Corrigan as he made his daily rounds. *Id.* ¶ 43.

Commissioner Cook and Warden Corcella[6] allegedly received several letters and requests for Mr. Sherman to speak with them about a remedy, including a transfer; Mr. Sherman had allegedly represented that he would end his hunger strike and begged for medical treatment as he was dying. *Id.* ¶¶ 43–44.

Corrigan Correctional Officers Cienik and Marios-Etman allegedly injured Mr. Sherman's shoulder even more by dragging him from one S.U.V. to another while he was being transferred. *Id.* ¶ 45.

After his discharge from the hospital, Mr. Sherman allegedly arrived at Bridgeport Correctional Center ("BCC") with kidney failure, an infection on his burned right foot, and new

---

[6] Mr. Sherman's Complaint appears to mistakenly refer to the Corrigan Warden as Murphy.

injuries. *Id.* ¶ 46. At BCC, he allegedly received double portions to recover his weight, pain pills, and mental health treatment. *Id.* ¶ 47.

While he was at BCC, Mr. Sherman allegedly sent Commissioner Cook and Warden Corcella written requests asking not to be transferred back to Corrigan. *Id.* Both before and after his hunger strike, Mr. Sherman allegedly sent Commissioner Cook and Warden Corcella requests for them to intervene to stop the retaliation and threats. *Id.*

After Mr. Sherman was allegedly transferred back to Corrigan, all of his medical treatment and double portions allegedly stopped, he was placed in the restricted housing unit, classified as a Chronic Discipline status inmate, and then transferred to Garner Correctional Institution ("Garner"). *Id.* ¶ 48. In 2021, he was allegedly forced to transfer to Corrigan again. *Id.* ¶ 49. During that transfer, the Garner correctional officers allegedly chained him up and threw him into the truck. *Id.*

When Mr. Sherman arrived at Corrigan in 2021, Lieutenant Pearson and twenty officers allegedly surrounded him and threatened him with segregation. *Id.* Mr. Sherman claims that his parole was sabotaged, his property was destroyed, and he was assaulted because he filed grievances against prison officials under the Prison Litigation Reform Act *Id.* ¶ 50. Since his transfer to Corrigan in 2021, Mr. Sherman has allegedly been denied a transfer to a Level 3 prison, contracted the COVID-19 virus, suffered assault, and has had to walk down a flight of stairs and long hallways despite his medical condition. *Id.* ¶¶ 48–50. He is allegedly still being threatened, intimidated, and having his property destroyed because he exercised his right to access the courts. *Id.* ¶ 50.

**B.  Procedural History**

On September 14, 2022, Mr. Sherman filed his Complaint, along with a motion for leave to proceed *in forma pauperis* and a motion to appoint counsel. Compl.; Mot. for Leave to Proceed in Forma Pauperis, ECF No. 2; Mot. to Appoint Counsel, ECF No. 3.

On September 19, 2022, the Court notified Mr. Sherman that his application for leave to proceed *in forma pauperis* was insufficient. Notice of Insufficiency, ECF No. 8.

Also on September 19, 2022, Mr. Sherman filed a motion for partial summary judgment. Mot. for Partial Summ. J., ECF No. 10.

On September 19, September 22, and September 29, 2022, Mr. Sherman filed supplemental documents related to his motion for leave to proceed *in forma pauperis*. ECF Nos. 9, 11, 12, 13.

On September 30, 2022, Mr. Sherman filed a motion for a temporary restraining order and a preliminary injunction. Mot. for a TRO and Prelim. Inj., ECF No. 14.

On October 7, 2022, the Court issued another notice of insufficiency regarding Mr. Sherman's motion for leave to proceed *in forma pauperis*. Notice of Insufficiency, ECF No. 16.

On October 18, 2022, Mr. Sherman filed a renewed motion for leave to proceed *in forma pauperis*, and the Court granted the motion the next day. Mot. for Leave to Proceed in Forma Pauperis, ECF No. 17; Order, ECF No. 19.

On November 10, 2022, the Court denied Mr. Sherman's motion for a temporary restraining order and a preliminary injunction. Order, ECF No. 20.

On November 30, 2022, Mr. Sherman filed a motion seeking reconsideration of the Court's order denying his motion for a temporary restraining order and a preliminary injunction. Mot. for Order, ECF No. 21. The Court denied this motion on December 2, 2022. Order, ECF No. 22.

On December 7, 2022, Mr. Sherman filed another motion for a temporary restraining order and a preliminary injunction. Mot. for TRO and Prelim. Inj., ECF No. 23.

On December 8, 2022, Mr. Sherman also filed a "Motion for Violation of Protective and E-Filing Standing Order." ECF No. 24.[7]

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that *sua sponte* dismissal of frivolous prisoner complaints is mandatory under the Prisoner Litigation Reform Act); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia*, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

---

[7] In this Order, the Court addresses only whether the claims asserted in Mr. Sherman's Complaint may proceed under 28 U.S.C. § 1915A. The Court will address Mr. Sherman's pending motions in a separate order.

555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Furthermore, complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford to *pro se* litigants).

## III.   DISCUSSION

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).

Mr. Sherman sets forth several causes of action in his Complaint, and the Court construes them as follows: (1) Eighth Amendment claims against Warden Corcella, Lieutenant Dumas, and Commissioner Cook for failure train and supervise, Compl. ¶ 52–53, for deliberate indifference to Mr. Sherman's lack of nourishment and kidney failure arising from his hunger strike, *id.* ¶ 33, 46, 52, and for deliberate indifference ; (2) Eighth Amendment deliberate indifference claims

against unspecified Defendants based on Mr. Sherman's discharge from the hospital without adequate clothing and without securing his accommodation at a prison facility, *id.* ¶ 58; (3) Eighth Amendment claims for deliberate indifference to Mr. Sherman's medical needs against Dr. Geronimo, John or Jane Doe, the director of Hartford Health Care, Nurse Swan-Daly, Nurse Kelo, and Correctional Officer Cassidy, *id.* ¶ 54; (4) Eighth and Fourteenth Amendment claims (and related state common law tort claims) against Nurse Swan-Daly, Nurse Kelo, and Correction Officer Cassidy based on alleged unauthorized and unconsented medical treatment and sexual abuse, *id.* ¶¶ 56–57; and (5) Eighth Amendment claims against Lieutenant Dumas, Officer Cienik and Officer Marios-Etman for deliberate indifference based on their treatment of Mr. Sherman while he was being transferred, *id.* ¶ 59.

Mr. Sherman's Complaint also references staff misconduct at Corrigan and Garner, parole sabotage, First Amendment retaliation (including assault), COVID infection, and interference with his grievance procedure, which allegedly resulted in a denial of Mr. Sherman's access to the courts during his transfers between Corrigan and Garner and his reincarcerations at Corrigan.[8] *Id.* ¶¶ 48–50. Finally, Mr. Sherman makes several requests for declaratory and injunctive relief. *Id.* ¶ 60(A)–(C).

Mr. Sherman has submitted with his Complaint approximately 275 pages of exhibits. "Under the Federal Rules of Civil Procedure, a complaint must be a plain and concise statement of facts constituting a claim recognized by law, and therefore a plaintiff may not file exhibits in lieu of alleging facts in the complaint against a defendant." *Rahim v. Barsto*, No. 3:22-cv-619 (MPS), 2022 WL 2704102, at *5 (D. Conn. July 12, 2022) (citing Fed. R. Civ. P. 8); *see also Walker v. Pastoressa*, No. 22-cv-00997 (HG) (LGD), 2022 WL 3716742, at *5 (E.D.N.Y. Aug.

---

[8] These claims are not included in his listed causes of action. *See id.* ¶¶ 52–59. Nor has he alleged that any of the named Defendants were involved with these acts of mistreatment or asserted constitutional violations.

29, 2022) ("While Plaintiff may include exhibits in support of his claims, he cannot rely on exhibits to fulfill his obligation to provide a short and plain statement of his claims that complies with Rule 8."). Nor should the Court be expected to comb the record to find evidence supporting Mr. Sherman's assertions. *See Irons v. U.S. Gov't*, No. 21-cv-4683 (KAM) (LB), 2021 WL 4407595, at *2 (E.D.N.Y. Sept. 27, 2021) ("Neither the court nor defendants should have to parse through the complaint or the attached exhibits to ascertain the factual basis for plaintiff's claims.").

Accordingly, the Court will determine whether Mr. Sherman has alleged any plausible claims against the named Defendants, consistent with the Federal Rule of Civil Rule 8(a)(2)'s standard of "a short and plain statement of the claim showing the pleader is entitled to relief."

The Court will address each of Mr. Sherman's claims in turn.

### A. The Eighth Amendment Claims Against Warden Corcella, Lieutenant Dumas, and Commissioner Cook

The Eighth Amendment to the U.S. Constitution prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, including punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment "imposes duties on [prison] officials, who must . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "[A]n inmate seeking to establish an Eighth Amendment violation for failure to protect or deliberate indifference to safety must prove (1) 'that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm,' and (2) that the prison official had a 'sufficiently culpable state of mind,' which in 'prison-conditions cases' is 'one of deliberate indifference to inmate health or safety.'" *Morgan v.*

12

*Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (second alteration in original) (quoting *Farmer*, 511 U.S. at 834).

"To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). To satisfy the subjective element, the plaintiff must show deliberate indifference, which requires "more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Id.* "More specifically, a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). To prevail on a § 1983 claim, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

### 1.  The Failure to Train, Supervise, and Correct Staff Violations Claims

Mr. Sherman asserts that Commissioner Cook, Warden Corcella, and Lieutenant Dumas acted with deliberate indifference by failing to train, supervise, and correct the violations of their staff. Compl. ¶¶ 52–53. But a plaintiff cannot sue a defendant for damages solely because of his or her supervisory position. *See id.* ("[A]fter *Iqbal*, there is no special rule for supervisory

13

liability."). Mr. Sherman must allege facts showing that each defendant "personally knew of and disregarded an excessive risk" to his health and safety. *Tangreti*, 983 F.3d at 619.

Accordingly, the Court must dismiss as not plausible any claims against Warden Corcella, Lieutenant Dumas, and Commissioner Cook based solely on alleged constitutional misconduct by other correctional staff under their supervision. The Court will, however, consider whether Mr. Sherman has alleged plausible claims based on each Defendant's own deliberate indifference to a serious risk of harm to Mr. Sherman's health and safety arising from his hunger strike or in relation to their refusal to transfer him away from Corrigan. [9]

### 2. The Hunger Strike Claims

Mr. Sherman's alleges that he engaged in a hunger strike that resulted in kidney failure and required his admission to Backus Hospital and medical intervention to prevent him from dying. Compl. ¶¶ 33, 46.[10] Drawing all reasonable inferences in favor of Mr. Sherman from the facts in the Complaint, the Court concludes that Mr. Sherman has sufficiently alleged that he was at a substantial risk of harm due to a hunger strike that resulted in his kidney failure. Thus, Mr. Sherman has satisfied the objective element for purposes of initial review.

As to the subjective element, Plaintiff alleges that Lieutenant Dumas watched Mr. Sherman starving as he made daily rounds and heard Mr. Sherman's requests for help. *Id.* These

---

[9] Plaintiff also refers to a first, second, or third degree burn on his right foot that Lieutenant Dumas allegedly ignored. Compl. ¶ 34, 43. The Court will address Mr. Sherman's claim based on Lieutenant Dumas' deliberate indifference to this condition in Part III.F below.

[10] District courts have held that an inmate who alleges only weight loss and temporary discomfort as the only consequences of his refusing to eat fails to allege a sufficiently serious condition to support an Eighth Amendment claim. *Zimmerman v. Racette*, No. 9:17-cv-0375 (TJM) (CFH), 2018 WL 3964704, at *5 (N.D.N.Y. Aug. 13, 2018); *Sawyer v. Prack*, No. 9:14-cv-1198 (DNH) (DEP), 2014 WL 12923403, at *7 (N.D.N.Y. Dec. 31, 2014) (finding Plaintiff had not raised sufficiently serious condition based on voluntary hunger strike that resulted in his weight loss); *Green v. Phillips*, No. 04 CIV. 10202 (TPG), 2006 WL 846272, at *5 (S.D.N.Y. Mar. 31, 2006) (dismissing Eighth Amendment claim because the plaintiff chose to go on the hunger strike and the symptoms did not rise to the level of a "sufficiently serious" condition, i.e., "a condition of urgency, one that may produce death, degeneration, or extreme pain" and were to be expected by someone who does not eat). Here, however, Mr. Sherman has alleged more serious consequences.

allegations suggest that Lieutenant Dumas was aware of, and may have ignored, the substantial

risk of harm that Mr. Sherman faced as a result of the hunger strike that eventually led to his

hospitalization.

Accordingly, Mr. Sherman may proceed on this Eighth Amendment claim against

Lieutenant Dumas for further development of the record.

Mr. Sherman has not, however, alleged facts showing that Commissioner Cook or

Warden Corcella had any role in the decision to keep him in the behavior observation cell during

his hunger strike. Nor has he alleged facts indicating that either Commissioner Cook or Warden

Corcella was aware of a substantial risk to Mr. Sherman's health and safety due to his underlying

medical conditions or any mental health issues suggesting that he had propensity towards self-

harm.

Mr. Sherman alleges that he sent letters to Warden Corcella and Commissioner Cook

begging for medical treatment and promising to end his hunger strike. Compl. ¶¶ 43–44. But an

official's receipt of a letter alone is not sufficient to establish that official's personal involvement

in the constitutional violation. *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010)

("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement.");

*Braxton v. Bruen*, No. 9:17-cv-1346 (BKS/ML), 2021 WL 4950257, at *6 (N.D.N.Y. Oct. 25,

2021) (citing *Jones v. Annucci*, No. 16-cv-3516 (KMK), 2018 WL 910594, at *11–12, (S.D.N.Y.

Feb. 14, 2018) (holding that the acting commissioner's failure to respond to the plaintiff's letter

complaining of unconstitutional conduct, "without more, does not plausibly allege his personal

involvement" and citing cases)); *Alvarado v. Westchester County.*, 22 F. Supp. 3d 208, 215

(S.D.N.Y. 2014) (holding that a defendant's mere receipt of the plaintiff's grievance does not

establish personal involvement when the defendant did not respond to or personally investigate the grievance).

Because Mr. Sherman has not alleged facts suggesting that Warden Corcella or Commissioner Cook consciously disregarded a substantial risk of harm to Mr. Sherman, the Court will dismiss his Eighth Amendment claims against these Defendants under 28 U.S.C. § 1915A(b).

### 3.  The Transfer Request Claims

Mr. Sherman also asserts claims for deliberate indifference under the Eighth Amendment based on (1) the failure of Lieutenant Dumas, Warden Corcella and Commissioner Cook to grant his transfer request out of Corrigan during his hunger strike in the behavior observation cell, and (2) the failure of Warden Corcella and Commissioner Cook to prevent his transfer back to Corrigan from Bridgeport Correctional Center. Compl. ¶¶ 43–44, 47.

As a general matter, an inmate does not have a right to being housed in a certain facility. *See Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) (noting that "[t]he Constitution does not . . . guarantee that the convicted prisoner will be placed in any particular prison" nor does it "protect a duly convicted prisoner against transfer from one institution to another," even when "life in one prison is much more disagreeable than in another"); *McKinnon v. Chapdelaine*, No. CV115035454S, 2013 WL 951324, at *1 (Conn. Super. Ct. Feb. 13, 2013) ("Our courts have clearly held that a prisoner has no liberty interest in his classification or assignment within the prison system because the commissioner correction has discretion to classify or transfer prisoners held in his custody.").

Mr. Sherman alleges he made transfer requests to Lieutenant Dumas during the Lieutenant's daily rounds and wrote to the Commissioner and the Warden begging for a transfer

and promising to end his hunger strike. Compl. ¶¶ 43–44. Mr. Sherman does not, however, allege facts suggesting that Corrigan lacked correctional staff who were competent to ensure his health and safety or that the failure to transfer him otherwise posed a substantial risk of harm.

Nor has Mr. Sherman alleged facts suggesting that his safety at Corrigan was at risk because of any substantiated threat of his being assaulted by correctional staff or other inmates. *See Pena v. New York*, No. 9:20-cv-0481 (TJM) (TWD), 2020 WL 3453554, at *3 (N.D.N.Y. June 24, 2020) (noting an inmate can state valid Eighth Amendment failure to protect claim based on fear of being assaulted where an assault actually occurred).

Mr. Sherman alleges that while he was recovering at BCC, he wrote to Warden Corcella and Commissioner Cook asking that he not be transferred back to Corrigan. Compl. ¶ 47. He claims that once he returned to Corrigan, all medical orders were cancelled, his medication and double portions stopped, and he was placed in the restricted housing unit and placed on Chronic Discipline status. *Id.* at ¶¶ 47–48. But Mr. Sherman has failed to allege facts suggesting that—at the time of his transfer from BCC to Corrigan—his physical and mental health required that he receive double portions or continuation of the same medical and mental health services he had received at BCC. *See id.* ¶ 47. Nor has he alleged facts reflecting that his Corrigan confinement (even in the restricted housing unit) posed a substantial risk of harm to his health or safety. *Id.*

Even if he satisfied the objective element of a deliberate indifference claim, Mr. Sherman has not alleged sufficient facts to satisfy the subjective element. None of Mr. Sherman's allegations indicate that Lieutenant Dumas had any power to provide Mr. Sherman a transfer from Corrigan to another facility and nevertheless failed to secure his transfer. *See Warwick v. Doe*, No. 3:20-cv-227 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that absent facts suggesting that the defendant actually had and failed to exercise the power to get

plaintiff in to see a dental surgeon sooner, plaintiff's allegations amounted to, at most, negligence).[11] Further, Mr. Sherman's allegation that he sent letters to Commissioner Cook and Warden Corcella and Cook requesting that he not be transferred does not suffice to establish that their personal involvement in any Eighth Amendment deliberate indifference. *See Baltas v. Rizvani*, No. 3:21-cv-436 (MPS), 2022 WL 17251761, at \*19 (D. Conn. Nov. 28, 2022) (noting that even if the complaint alleged that supervisory official received a letter, it would not suffice to establish personal involvement in Eighth Amendment violation); *Barkai v. Mendez*, No. 21-cv-4050 (KMK), 2022 WL 4357923, at \*10 (S.D.N.Y. Sept. 20, 2022) (citing cases holding that receipt by a supervisory official of a letter or complaint without more is not sufficient to establish the official's personal involvement in a § 1983 constitutional claim).[12] *See Darby v. Greenman*, 14 F.4th 124, 131 (2d Cir. 2021) (noting vague and conclusory allegations of official participation in civil rights violations are not sufficient).

Accordingly, the Court will dismiss Mr. Sherman's Eighth Amendment claims against Lieutenant Durant, Warden Corcella, and Commissioner Cook in connection with Mr. Sherman's transfer requests as not plausible. *See* 28 U.S.C. § 1915A(b).

### B.  The Eighth Amendment Hospital Discharge Claims

Mr. Sherman alleges that his sudden hospital discharge during a rainstorm without adequate clothing and no secured housing constitutes deliberate indifference under the Eighth Amendment. Compl. ¶ 58. Mr. Sherman appears to assert this claim against all Defendants, but

---

[11] The decision of where to house an inmate is expressly left to the DOC Commissioner's decision. Conn. Gen. Stat. § 18-86 ("The commissioner may transfer any inmate of any of the institutions or facilities of the department to any other such institution or facility. . . when it appears to the commissioner that the best interests of the inmate or the other inmates will be served by such action").

[12] Moreover, the court cannot construe Mr. Sherman's allegation—"C.R.C.C. staff. Appeal to Bpt. Stop for a transfer of Plaintiff. Promis[]ing. treatment. Medical etc."—to suggest any deliberate indifference by Corcella or Cook. *See* Compl. ¶ 48.

his allegations do not specify who issued his discharge, who failed to provide him with adequate

clothing, or who failed to secure his housing accommodation. *See id.* ¶¶ 40–42. Without any

alleged facts reflecting that a named Defendant acted with deliberate indifference to his health or

safety in connection with his discharge, Mr. Sherman cannot state a plausible Eighth

Amendment violation. *See Iqbal*, 556 U.S. at 678.

Accordingly, this claim is dismissed as not plausible under 28 U.S.C. § 1915A(b).

### C.  The Eighth Amendment Deliberate Indifference to Medical Needs Claims Against Dr. Geronimo and John or Jane Doe

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of

prisoners," whether "manifested by-prison doctors in response to the prisoner's needs or by

prison guards in intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976).

(internal quotation marks and citation omitted). "Yet not every lapse in medical care is a

constitutional wrong." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, a plaintiff

must show that the conditions to which he is subjected "pose an unreasonable risk of serious

damage to his health" and that the alleged deprivation of adequate medical care is "sufficiently

serious." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (internal quotation marks omitted).

Where a prisoner receives some medical care but that care is allegedly inadequate, the court must

"examine how the offending conduct is inadequate and what harm, if any, the inadequacy has

caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 279.

Second, a plaintiff must show that the defendant acted with subjective recklessness—that

is, that the defendant knew of and disregarded "an excessive risk" to plaintiff's health or safety.

*Darnell*, 849 F.3d at 32. To know of and disregard an excessive risk to the plaintiff's health or

safety, the defendant "must be both aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists, and he must also draw the inference." *Darnell*, 849 F.3d at 32 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Negligence on the part of a medical professional, "even if it constitutes medical malpractice, does not, without more," amount to a constitutional violation. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

### 1. The Supervisory Liability Claims

Mr. Sherman seeks to hold Director Doe and Dr. Geronimo liable as supervisors for the alleged misconduct of hospital staff in force-feeding him and subjecting him to allegedly unauthorized medical intervention. Compl. ¶ 54. To sufficiently plead these claims, Mr. Sherman must allege facts describing how either Director Doe or Dr. Geronimo were personally aware of, and deliberately disregarded, a substantial or excessive risk to Mr. Sherman's health or safety. *See Tangreti*, 983 F.3d at 618.

As an initial matter, Mr. Sherman has not alleged any facts about Director Doe's involvement with Mr. Sherman's medical treatment at the hospital. Thus, Mr. Sherman has not stated a plausible claim against Director Doe.

Nor has Mr. Sherman alleged a plausible Eighth Amendment claim against Dr. Geronimo. No facts alleged in the Complaint suggest that Dr. Geronimo was aware of, and acted with conscious disregard to, any substantial risk of harm to Mr. Sherman while he was at Backus Hospital. Mr. Sherman has not alleged facts suggesting that Dr. Geronimo was aware of the asserted hospital staff misconduct—which allegedly included treating Mr. Sherman like an animal, falsely claiming that he had urinary infection and that he raped his cell mate, falsely

representing there was a court in order to subject him to treatment, and denying him telephone privileges[13]—prior to Dr. Geronimo's visit to Mr. Sherman's hospital room. Compl. ¶ 40.

Even if any asserted staff misconduct violated Mr. Sherman's constitutional rights, after-the-fact notice of a violation of an inmate's rights—when that violation is not ongoing—is insufficient to establish a prison official's indifference for purposes of an Eighth Amendment claim. *See El-Massri v. Marmora*, No. 3:18-cv-1249 (CSH), 2022 WL 6170681, at \*22 (D. Conn. Oct. 7, 2022) ("Marmora's post-incident notification about El-Massri's alleged deprivations is insufficient to raise an inference that she had any direct involvement with the alleged Fourteenth Amendment violations"); *Andrews v. Gates*, No. 3:17-cv-1233 (SRU), 2019 WL 2930063, at \*8 (D. Conn. July 8, 2019) ("[N] notice after the fact of an isolated incident is insufficient to establish supervisory liability."); *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("After the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation."). Mr. Sherman's allegations fail to suggest that he was at a substantial risk of harm during Dr. Geronimo's visit so as to raise an inference that Dr. Geronimo could have, but failed to, take appropriate remedial action.

To the extent that Mr. Sherman reported that he was not properly diagnosed with a urinary infection, he alleges merely that he disagreed with a medical judgment. *See* Compl. ¶ 40. Such disagreement cannot support a claim for deliberate indifference as long as the treatment provided is "adequate." *Chance*, 143 F.3d at 703; *see also Boyd v. Deasis*, 524 F. Supp. 3d 128, 144 (W.D.N.Y. 2021) (pretrial detainee's disagreement with medical treatment was insufficient to support a constitutional deliberate indifference claim); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications,

---

[13] Although Mr. Sherman complains that he was not permitted to call his family or anyone to inform them of his whereabouts, he fails to allege that any named defendant denied him telephone use. *See* Compl. ¶¶ 29–30.

diagnostic techniques . . . forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim.").

"In certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan," as evident when treatment recommendations are not derived from "sound medical judgment," but rather from "ulterior motives." *Chance*, 143 F.3d at 703–04 (holding that plaintiff stated a claim of deliberate indifference by alleging that defendants recommended extracting his teeth because of monetary incentives). Here, however, Mr. Sherman has put forward no allegations suggesting that Director Doe or Dr. Geronimo misdiagnosed him as a result of such ulterior motives.

Accordingly, the Eighth Amendment claims against Director Doe and Dr. Geronimo for their alleged failure to supervise, train and intervene are dismissed as not plausible under 28 U.S.C. § 1915A(b).

## 2. The Medical Indifference Claims Against Nurse Swan-Daly

Mr. Sherman alleges that Nurse Swan-Daly ignored for hours his complaints of pain in his stomach and penis, failed to examine him, yelled at him to urinate, and told him to drink more water. Compl. ¶ 33. For purposes of initial review, the Court concludes that Mr. Sherman has sufficiently alleged a plausible Eighth Amendment based on RN Swan-Daly's conscious disregard to his serious pain arising from his groin condition. *See id.*

Accordingly, the Court will permit this Eighth Amendment medical indifference claim proceed against RN Swan-Daly in her individual capacity for further development of the record. *See Gaffney v. Perelmuter*, 805 F. App'x 53, 57 (2d Cir. 2020) (summary order) ("[A] reasonable jury could infer from the evidence that Perelmuter acted recklessly, or even wantonly, by ignoring Gaffney's cries of pain and continuing with the procedure without providing pain relief . . . .").

### 3. The Medical Indifference Claims Against Nurse Kelo and Correctional Officer Cassidy

Mr. Sherman has not alleged facts indicating that Nurse Kelo or Correction Officer Cassidy had any involvement with his medical treatment.

Mr. Sherman's allegations do indicate that RN Kelo may have violated his HIPAA rights by allegedly yelling about his medical issues for others to hear and sharing his medical information with Correction Officer Cassidy. Compl. ¶ 37. But "HIPAA does not provide for either an express or implied private right of action," which means that Mr. Sherman cannot sue for violations of his HIPAA rights. *Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (citing *Acara v. Banks,* 470 F.3d 569, 571 (5th Cir. 2006); and *Webb v. Smart Document Sols., LLC,* 499 F.3d 1078, 1081 (9th Cir. 2007)).

Accordingly, because Mr. Sherman has not alleged sufficient facts from which the court could draw a reasonable inference that either RN Kelo or Officer Cassidy acted with deliberate indifference to his medical needs, health or safety, the Court will dismiss these claims under § 1915A. *See Iqbal*, 556 U.S. at 678.

### D. The Claims against Nurse Swan-Daly, Nurse Kelo, and Correction Officer Cassidy for Unauthorized Medical Treatment

Mr. Sherman alleges that he was subjected to unauthorized and unconsented medical treatment by Nurse Swan-Daly, Nurse Kelo, and Correctional Officer Cassidy as a result of their misrepresentation that a court order[14] required their medical intervention to prevent Mr. Sherman

---

[14] The Court notes that the exhibits attached to Mr. Sherman's Complaint include an *ex parte* temporary injunction order issued by the Connecticut Superior Court on September 13, 2019, authorizing health staff acting under the DOC Commissioner "to obtain vitals, blood work, hospitalize Inmate Sherman, or to provide him intravenous fluids and/or nourishment, nasal-gastric feeding, resuscitation in the event of a cardiac event and any other necessary health care measure by the use of reasonable force if necessary, and notwithstanding Inmate Sherman's refusal or objection." Compl. at 101. It further states that "Inmate Sherman shall be given an opportunity to consent to the medical intervention beforehand, and force shall only be used if inmate Sherman continues to refuse." *Id.* Although this exhibit appears to contradict Mr. Sherman's allegations about his unauthorized medical treatment, the Court will not resolve this factual issue on initial review.

from dying. Compl. ¶¶ 27–36. Among other things, Mr. Sherman alleges that Nurse Swan-Daly

"shoved a tube up [his] penis for [him] to urinate." *Id.* ¶ 35. These allegations raise claims for

both violations of substantive due process under the Fourteenth Amendment and sexual abuse in

violation of the Eighth Amendment.[15]

### 1.   The Fourteenth Amendment Claims

While claims of inadequate treatment for sentenced prisoners are generally governed by

the Eighth Amendment, the Fourteenth Amendment "protects the individual's liberty interest in

making the decisions that affect his health and bodily integrity." *Pabon v. Wright*, 459 F.3d 241,

253 (2d Cir. 2006). The Supreme Court has recognized that "a competent person has a

constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan ex*

*rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). To state a substantive due

process claim for deprivation of a cognizable liberty interest, a plaintiff must allege facts

indicating that defendants' "alleged acts . . . were arbitrary, conscience-shocking, or oppressive

in the constitutional sense, not merely incorrect or ill-advised." *Ferran v. Town of Nassau*, 471

F.3d 363, 369–70 (2d Cir. 2006) (citations and internal quotation marks omitted).

Here, Mr. Sherman alleges that RN Swan-Daly subjected him to unauthorized

unconsented to medical treatment, threatened him with force if he did not comply with an

allegedly nonexistent court order compelling medical treatment, and made misrepresentations

---

[15] "As the Second Circuit has explained, 'the Supreme Court has made clear that claims concerning unwanted medical treatments are properly analyzed in terms of a Fourteenth Amendment liberty interest, rather than in terms of a privacy interest.'" *Giordano v. Connecticut Valley Hosp.*, 588 F. Supp. 2d 306, 322 (D. Conn. 2008) (citing *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 361 (2d Cir. 2004) (other internal quotations omitted)); *see also Taylor v. Jepsen*, No. 3:17CV1972 (AWT), 2020 WL 6703189, at *1 (D. Conn. Oct. 28, 2020) (considering claim of Fourteenth Amendment due process violation based on allegations that defendants administered intravenous fluids while plaintiff was unconscious despite plaintiff's refusal; dismissing claim for failure to exhaust); *Banks v. Annucci*, 48 F. Supp. 3d 394, 415 (N.D.N.Y. 2014) ("The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment.").

about the existence of such order. Compl. ¶¶ 27–36. For the purposes of initial review, Mr.

Sherman has sufficiently raised a plausible substantive due process claim based on unauthorized

and unwanted medical treatment against Nurse Swan-Daly in her individual capacity. *See*

*Gomez-Kadawid v. Lee*, No. 20-cv-01786 (VEC) (DF), 2022 WL 676096, at *5 (S.D.N.Y. Feb.

3, 2022) (denying the defendants' motion to dismiss because "Plaintiff's allegations (construed

liberally, in light of his *pro se* status), plead that Defendants forcibly performed a surgical

procedure on him without obtaining *any consent* from him at all, which, if proven (and if not

adequately justified by a legitimate governmental interest), would constitute a violation of

Plaintiff's federal constitutional right to substantive due process"), *report and recommendation*

*adopted*,  2022 WL 558125 (S.D.N.Y. Feb. 24, 2022).

It is difficult to discern from Mr. Sherman's Complaint whether Nurse Kelo and

Correction Officer Cassidy were involved in this alleged unauthorized medical treatment. Mr.

Sherman alleges that Nurse Kelo was "falsifying a story," Compl. ¶ 40, but the Court cannot

determine whether he refers to Nurse Kelo falsely telling Correction Officer Cassidy about his

urinary infection and purported rape of his cellmate or about the assertedly nonexistent medical

order, *see id.* To the extent that Mr. Sherman seeks to hold either Nurse Kelo or Officer Cassidy

liable in connection with any unauthorized medical treatment, his allegations do not satisfy Rule

8's requirement that the Complaint set forth a "plain statement of the claim showing that the

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), even when accounting for the liberal

construction the Court gives to *pro se* pleadings.

Accordingly, the Court will permit Mr. Sherman to proceed on his Fourteenth

Amendment substantive due process claim against Nurse Swan-Daly in her individual capacity

and dismiss his claims against Nurse Kelo and Officer Cassidy.

## 2.  The Eighth Amendment Sexual Abuse Claims

To state a claim for sexual abuse, as for other Eighth Amendment claims, "a prisoner must allege two elements, one subjective and one objective." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). To meet the objective prong, Mr. Sherman must show that the abuse was sufficiently "severe or repetitive" that it offends "contemporary standards of decency." *Id.* at 257, 259 (citing *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)). He must also allege facts showing that Nurse Swan-Daly acted with a "sufficiently culpable state of mind." *Id.* at 256. "In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties . . . or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257–58.

Here, Mr. Sherman's alleges that "[t]hey swabbed [his] penis" because "[he had] a urinary infection" and that Nurse Swan-Daly "shoved a tube up [his] penis for [him] to urinate." Compl. ¶¶ 34–35. These allegations appear to show that the alleged violations were for legitimate medical purposes: evaluating Mr. Sherman's urinary infection and enabling him to urinate. But despite these apparent legitimate purposes, Defendants alleged actions could have been intended to humiliate Mr. Sherman. *See Crawford*, 796 F.3d at 258 (noting that legitimate activities such as strip searches and cavity searches do not violate an inmate's constitutional rights "as long as the officer had no intention of humiliating the inmate or deriving sexual arousal or gratification from the contact"). At this initial stage, Mr. Sherman's allegations are sufficient to permit his sexual abuse claim to proceed for further development, particularly in light of the animosity that Defendants allegedly exhibited. *See, e.g.*, Compl. ¶ 36 ("The attitudes with the nurse and the correctional officers continue to get [worse].").

Accordingly, the Court will permit Mr. Sherman to proceed on his Eighth Amendment claim of sexual abuse against Nurse Swan-Daly in her individual capacity.

**E.  The Eighth Amendment Claims Against Lieutenant Dumas, Officer Cienik, and Officer Marios-Etman for Mistreatment During Mr. Sherman's Transfer**

Mr. Sherman asserts Eighth Amendment claims against Officer Cienik, Officer Marios-Etman, and Lieutenant Dumas for cruel and unusual punishment or deliberate indifference arising from Mr. Sherman's treatment while he was being transferred between facilities. Compl. ¶ 59.

**1.  Officer Cienik and Officer Marios-Etman**

Mr. Sherman alleges that Officers Cienik and Marios-Etman "further injur[ed]" his shoulder by dragging him ("a weak, dying man") from "one S.U.V to another S.U.V." Compl. ¶ 45. Even assuming that the injury to Mr. Sherman's shoulder (which he has not described in further detail) can satisfy the objective component of an Eighth Amendment claim, he has not alleged any facts suggesting that either Officer Cienik or Officer Marios-Etman was aware that Mr. Sherman had a serious shoulder injury when they transported him. Thus, Mr. Sherman's allegations do not raise an inference that these Defendants acted with a conscious disregard of his shoulder condition when they moved him from one S.U.V. to another.

To the extent he claims misuse of force in violation of the Eighth Amendment, Mr. Sherman's allegations fail to suggest either (1) that Officers Cienik and Marios-Etman subjected him to force that was severe enough to violate "contemporary standards of decency" or was "repugnant to the conscience of mankind," *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992); or (2) that they applied force for malicious or sadistic rather than legitimate penological reasons, *id.* at 7.

Accordingly, the Court will dismiss Mr. Sherman's Eighth Amendment claims against Officers Cienik and Marios-Etman as not plausibly alleged under 28 U.S.C. § 1915A(b).

27

### 2. Lieutenant Dumas

The Court construes Mr. Sherman's final claim for deliberate indifference, Compl. ¶ 59, as arising from his allegation that Lieutenant Dumas allowed his right foot (which allegedly had an infected burn) "to rot," *id.* ¶ 43.[16] The Court considers whether Lieutenant Dumas acted to deny or delay Mr. Sherman access to medical care for his infected burn on his right foot. *See Estelle*, 429 U.S. at 104–105.

Mr. Sherman alleges that he had a first, second or third degree burn on his right foot that became infected. Compl. ¶¶ 34, 39, 46. A burn may suffice to establish the objective element of an Eighth Amendment claim only if it is "so debilitating that the failure to treat [it] subjected him to a significant risk of harm." *Calhoun v. N.Y.C. Dep't of Corr.*, No. 10-cv-182 (LAK/HBP), 2014 WL 144659, at *10 (S.D.N.Y. Jan. 14, 2014). Courts have concluded that the objective prong was not satisfied when the plaintiff "suffered a second-degree burn that resulted in several blisters . . . described as small" and "[t]he burn was successfully treated with the application of an antibiotic cream and a dressing," *Pressley v. Green*, No. 02-cv-5261 (NRB), 2004 WL 2978279, at *4 (S.D.N.Y. Dec. 21, 2004), but have determined that it was satisfied when the plaintiff "slipped and fell" and "suffered first degree burns" as a result, *Walker v. Vargas*, No. 11-cv-9034 (ER), 2013 WL 4792765, at *8 (S.D.N.Y. Aug. 26, 2013). Here, for the purposes of initial review, the Court concludes that Mr. Sherman's possible first-degree burn, one that became infected, satisfies the objective component of an Eighth Amendment claim.

---

[16] Although paragraph 59 of the Complaint asserts a claim for "[t]he actions of Dumars, C/O Cienik and C/O Marios-Etman, who handle[d] and pass[ed] Plaintiff around like a rag doll," Mr. Sherman has not sufficiently alleged that Lieutenant Dumars was involved in this alleged constitutional violation. Mr. Sherman's only other description of his alleged mistreatment while being transferred comes in paragraph 45, which alleges that "Offic[er] Clenik [sic] and Marios-Etman drag[ged] a weak, dying man, from one S.U.V. to another S.U.V." This portion of the Complaint does not mention Lieutenant Dumas.

As to the subjective requirement, Mr. Sherman's allegations indicate that Lieutenant Dumas ignored Mr. Sherman's infected right foot even though Lieutenant Dumas learned of Mr. Sherman's condition through his daily rounds. Compl. ¶ 43. Construed liberally, this allegation is sufficient to satisfy the subjective prong of an Eighth Amendment claim. *See Silva v. Kilham*, No. 3:19-cv-1719 (VLB), 2020 WL 2404922, at *5 (D. Conn. May 12, 2020) (concluding that the plaintiff had "alleged sufficient facts to satisfy the subjective element of the Eighth Amendment analysis" when a prison official "knew of his need for medical assistance but refused to help him").

Accordingly, the Court will permit Mr. Sherman to proceed on his Eighth Amendment claim against Lieutenant Dumas for deliberate indifference to Mr. Sherman's medical needs.

### F.  Misjoinder and Severance

In his Complaint, Mr. Sherman alleges facts about nonparty correctional staff mistreatment during his transfers between Corrigan and Garner and his Corrigan confinement after his 2021 transfer. *See* Compl. ¶¶ 48–50.[17] Mr. Sherman does not appear to assert specific claims arising from these allegations in the instant Complaint. *See* Compl. ¶¶ 52–59 (listing causes of action). To the extent that he does, such claims are misjoined in this action.

Rule 20 of the Federal Rules of Civil Procedure permits a plaintiff to sue multiple defendants in the same lawsuit only if the allegations arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). When a complaint fails to satisfy this Rule, the court may sever the claims. *See* Fed. R. Civ. P. 21. In deciding whether to sever a

---

[17] He alleges that he was subjected threats, physical mistreatment, contracted the COVID virus, parole sabotage, First Amendment retaliation (including assault), and interference with his grievance procedure resulting in a denial of his access to the courts. Compl. ¶¶ 48–50.

claim, the court must consider whether "(1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims. *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012).

Here, Mr. Sherman's allegations about mistreatment during his transfers between Garner and Corrigan and his confinement at Corrigan after his 2021 transfer do not arise from the same transactions or occurrences as the Eighth and Fourteenth Amendment claims arising from his hunger strike and treatment at Backus Hospital. Furthermore, judicial economy would not be served by trying all of the claims because different sets of evidence and witnesses would need to be presented at trial, and different remedies or other considerations might arise in settlement negotiations.

Accordingly, the Court will sever these claims and dismiss them from the current action. If Mr. Sherman wishes to pursue claims arising from his alleged mistreatment during his transfers between Garner and Corrigan and his confinement at Corrigan after his 2021 transfer, he must do so in a separate action by filing a separate Complaint.

### G.  The Official Capacity Claims

Mr. Sherman's prayer for relief includes requests for damages and several forms of injunctive and declaratory relief. Compl. at 20–21.

Any claims for money damages against Defendants, who are state employees, in their official capacities as barred by the Eleventh Amendment and will be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (noting that the Eleventh Amendment's bar on damages

actions against a state in federal court "remains in effect when State officials are sued for damages in their official capacity").

Furthermore, Mr. Sherman's Complaint does not support any claims for injunctive or declaratory relief against Defendants in their official capacities. In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a limited exception to the Eleventh Amendment's grant of state sovereign immunity from suit that permits a plaintiff to sue a state official acting in their official capacity for prospective injunctive relief against continuing violations of federal law. *Id.* at 155–56; *see also In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."). This exception does not, however, "permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Here, Mr. Sherman has alleged plausible Eighth Amendment and Fourteenth Amendment claims against Lieutenant Dumas and RN Swan-Daly based on these Defendants alleged past conduct. No alleged facts indicate that these constitutional violations are ongoing. Mr. Sherman's requests for declaratory relief in relation to these claims are likewise premised solely on Defendants' past conduct. *See* Compl. ¶ 60(A). Thus, Mr. Sherman's claims for declaratory are barred by the Eleventh Amendment. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."); *Henderson v. Quiros*, No. 3:21-cv-1078 (VAB), 2021 WL 5359739, at *8 (D. Conn. Nov. 17, 2021) ) (dismissing official capacity claims in the absence of continuing or ongoing constitutional violations); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07

(S.D.N.Y. 2010) (noting that requests for injunctive relief are remedies and are dismissed when the underlying claim is dismissed).

Accordingly, the Court will dismiss Mr. Sherman's official capacity claims.

### H.  The State Law Claims

"In the absence of diversity jurisdiction, a federal court presented with both federal and state claims may hear the state claims only if they are so closely related to the federal questions as to form part of the same 'case or controversy' under Article III." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000). Claims are considered part of the same case or controversy when "they share a 'common nucleus of operative fact,' such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Id.* (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)). Here, Mr. Sherman asserts state law claims of assault and battery that arise from the same factual basis as the Eighth and Fourteenth Amendment claims that the Court will allow to proceed involving Nurse Swan-Daly's unauthorized medical treatment. *See* Compl. ¶ 57.

In Connecticut, a civil assault is defined as "the intentional causing of imminent apprehension of harmful or offensive contact with another." *Germano v. Dzurenda*, No. 3:09-cv-1316 (SRU), 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011). "[A]n actor is subject to liability to another for battery if (a) he or she acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334, n.3 (1975)). In light of Mr. Sherman's allegations that Nurse Swan-Daly administered unauthorized medical treatment, the Court will permit his claims of assault and battery to proceed against Nurse Swan-Daly as well.

**ORDERS**

For the foregoing reasons, the court enters the following orders:

(1) The case shall proceed on the following claims for damages against Defendants in their individual capacities: (a) the Fourteenth Amendment substantive due process claim against Nurse Swan-Daly; (b) the Eighth Amendment sexual abuse claim against Nurse Swan-Daly; (c) the Eighth Amendment deliberate indifference claim against Lieutenant Dumas; and (d) the state law assault and battery claims against Nurse Swan-Daly. All other claims, including all official capacity request for declaratory and injunctive relief, are dismissed.

The following Defendants are dismissed from this action: Director of Hartford Health Care John or Jane Doe, former Commissioner Cook, Dr. Rommell Geronimo; Nurse Susette Kelo, Correction Officer Cassidy, Correction Officer Cienik, Correction Officer Marios-Etman, Warden Corcella, and current Commissioner Angel Quiros.

Mr. Sherman's claims about mistreatment during his transfers between Garner and Corrigan and his confinement at Corrigan after his 2021 transfer are severed and dismissed without prejudice. He may file a separate action to pursue his claims arising from these allegations.

Mr. Sherman may, by **May 8, 2023**, file an Amended Complaint to correct the deficiencies in his claims identified in this Order. He is advised that any Amended Complaint will completely replace the prior Complaint in the action, and that no portion of any prior Complaint shall be incorporated into his Amended Complaint by reference. He must name all Defendants against whom he asserts claims in the caption of his Amended Complaint.

(2) The Clerk of Court shall verify the current work addresses for Nurse Swan-Daly and Lieutenant Dumas with the DOC Office of Legal Affairs, mail a waiver of service of process

request packet containing the Complaint and attachments to them at their confirmed addresses by **April 28, 2023**, and report on the status of the waiver request by **May 12, 2023**. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

 (3) The Clerk shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **June 9, 2023**. If a Defendant chooses to file an Answer, the Defendant shall admit or deny the allegations and respond to the cognizable claims recited above. The defendant may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **October 6, 2023**. Discovery requests need not be filed with the court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **November 10, 2023**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Sherman changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in

the dismissal of the case. Mr. Sherman must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Sherman has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) Mr. Sherman shall utilize the Prisoner Efiling Program when filing documents with the court. Mr. Sherman is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of April, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE